123 F.3d 1210
 97 Cal. Daily Op. Serv. 6576, 97 Daily Journal
D.A.R. 10,740
Gilbert BELGARDE, Petitioner-Appellant,
v.
STATE OF MONTANA; Montana Supreme Court; Yellowstone
County, Thirteenth Judicial District Court,
Respondents-Appellees.
 No. 96-35447.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Jan. 9, 1997.*
Decided Aug. 19, 1997.
 
 Gilbert Belgarde, Box Elder, MT, pro se.
 Jennifer M. Anders, Assistant Attorney General, Helena, MT, for respondents-appellees.
 Appeal from the United States District Court for the District of Montana; Jack D. Shanstrom, District Judge, Presiding. D.C. No. CV-94-00149-JDS.
 Before: CHOY, FERGUSON, and WIGGINS, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 Gilbert Belgarde appeals pro se the district court's grant of summary judgment in favor of the State of Montana, et al., in his 28 U.S.C. § 2254 petition for writ of habeas corpus. While we hold that Belgarde's constitutional claims are meritless, we write to emphasize that the district court properly exercised jurisdiction over Belgarde's habeas petition.
 
 Factual and Procedural Background
 
 2
 Gilbert Belgarde was involved in a single-car accident on August 12, 1992, in which his vehicle crashed into a concrete barrier and guardrail at the end of a dead-end street. As a result of the accident, Belgarde was rendered unconscious, and he did not regain consciousness until after he was admitted to the hospital. While Belgarde was unconscious, a police officer requested that a sample of Belgarde's blood be taken by a nurse, so that it could be examined to determine whether alcohol was present. The nurse complied. Belgarde's blood alcohol content was .24 percent.
 
 
 3
 A jury convicted Belgarde of driving under the influence of alcohol ("D.U.I.") and failure to wear a seatbelt. This conviction was Belgarde's second for the offense of D.U.I. Belgarde appealed to the state district court, and, following a de novo bench trial, was again convicted of the same offenses. The state district court sentenced Belgarde to six months in jail with all but seven days suspended, conditional upon Belgarde's attendance at an alcohol dependency treatment program. The court also fined Belgarde $500. The district court stayed the execution of Belgarde's sentence pending the outcome of his habeas petition.[1]
 
 
 4
 Belgarde appealed his conviction and sentence directly to the Montana Supreme Court, raising the issues in this habeas petition. The court affirmed Belgarde's conviction and sentence in an unpublished decision.
 
 
 5
 Belgarde then filed a petition for a writ of habeas corpus in the district court. The district court granted respondents' motion for summary judgment. Belgarde now appeals this decision of the district court, alleging that 1) taking his blood while he was unconscious and using the blood test results to convict him violated his Fifth Amendment privilege against self-incrimination; 2) Montana's "implied consent" law violates the Fourteenth Amendment because it takes away his right to refuse a blood test; 3) Belgarde's sentence of jail time, a fine, and attendance at an alcohol dependency treatment program violates the Eighth Amendment and the prohibition against double jeopardy; and 4) his Fourth and Sixth Amendment rights were violated.
 
 Analysis
 
 6
 I. Personal Jurisdiction in Section 2254 Petitions
 
 
 7
 The district court did not expressly address the question of whether it had jurisdiction over Belgarde's petition. Nor do the parties question this court's jurisdiction. However, we must raise the issue of jurisdiction sua sponte. WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1135 (9th Cir.1997) (en banc).
 
 
 8
 A petitioner for habeas relief under Section 2254 must name the state officer having custody of him or her as a respondent. Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir.1994). "Failure to name the petitioner's custodian as a respondent deprives federal courts of personal jurisdiction." Id. As an applicant for a writ of habeas corpus who is not currently in custody, but who is subject to future custody, Belgarde must name as the respondents to his petition 1) the attorney general of the State of Montana, and 2) the officer having present custody over Belgarde. See 28 U.S.C. foll. § 2254, Rule 2(b).[2]
 
 
 9
 Belgarde used AO Form 241 (Rev.5/85), "PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY," to file his pro se habeas petition. In his petition, Belgarde expressly named the State of Montana, the Montana Supreme Court, and the Yellowstone County Thirteenth Judicial District Court as respondents. Thus, Belgarde apparently failed to name the Attorney General of the State of Montana as a respondent. Indeed, the Montana Attorney General was not listed as a respondent on our docket sheet, or on the district court's docket sheet.[3] There is no notation on the district court docket sheet indicating that the Attorney General responded to the petition as a named respondent; rather, the response filed by a Montana Assistant Attorney General was on behalf of the other three named respondents only. Under Stanley, then, it would appear that the federal courts lack jurisdiction over Belgarde's petition. See Stanley, 21 F.3d at 360.
 
 
 10
 However, upon closer examination of Belgarde's habeas petition, it seems as though the jurisdictional requirement was in fact met. On the habeas petition (which is a pre-printed form on which Belgarde filled in the blanks), there is space labeled "Name of Petitioner (include name under which convicted)" in which Belgarde filled in his own name. This space is separated by a "v." from another area labeled "Name of Respondent (authorized person having custody of petitioner)." Here, Belgarde wrote, "State of Montana,State of Montana Supreme Court. 13th Judicial Dist. Court (Yellowstone) Billings Montana," but did not include the Attorney General of Montana. However, underneath the "Name of Petitioner/Name of Respondent" section on the form is separate section, labeled "The Attorney General of the State of:" in which Belgarde filled in "Montana." See AO Form 241 (Rev.5/85), "PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY," at 2.
 
 
 11
 The "Attorney General" section, as it exists on the Belgarde's form, seems to stand in isolation. However, following Section 2254 in the United States Code there exists an Appendix of Forms to 28 U.S.C. § 2254. In that Appendix, a "MODEL FORM FOR USE IN APPLICATIONS FOR HABEAS CORPUS UNDER 28 U.S.C. § 2254" can be found. On the model form, the "Attorney General" section is different from that on Belgarde's pre-printed form. Specifically, the model form appears in relevant part as follows:
 
 
 12
 ____________, PETITIONER
 
 
 13
 (Full name)
 
 
 14
 v.
 
 
 15
 ____________, RESPONDENT
 
 
 16
 (Name of Warden, Superintendent, Jailor, or authorized person having custody
 
 
 17
 of petitioner)
 
 
 18
 and
 
 
 19
 THE ATTORNEY GENERAL OF THE STATE OF ____________,
 
 
 20
 ADDITIONAL RESPONDENT.
 
 
 21
 See 28 U.S.C. foll. § 2254, Appendix of Forms (emphasis added). The additional words on the model form are crucial; they suggest that the purpose of the "Attorney General" space is to ensure that the Attorney General of the state specified by the petitioner is automatically named as a respondent to a Section 2254 habeas petition.
 
 
 22
 Belgarde is a pro se petitioner. We construe a pro se litigant's habeas petition with deference. Maleng v. Cook, 490 U.S. 488, 493, 109 S.Ct. 1923, 1926-27, 104 L.Ed.2d 540 (1989), see also Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (1990). The similarity between Belgarde's habeas form and the sample form is such that, if Belgarde were aware of the rule that he name the Attorney General as a respondent, he may in all likelihood have thought that he was complying with that requirement by writing "Montana" in the space following "Attorney General of the State of:" on the form. This case raises an important jurisdictional issue about how habeas petitions are being treated in lower courts. If the district courts do not treat the "Attorney General" space as a respondent space, as it is intended to be, then petitions over which the federal court may rightly have jurisdiction could be dismissed due to a semantic technicality on the form, or due to the lack of knowledge about purpose of the space on the form.[4] The "Attorney General" space on AO Form 241 is to be construed as naming the Attorney General of the state indicated in the space as a respondent to that habeas petition. The district court's exercise of jurisdiction in this case was proper.II. Belgarde's Constitutional Claims
 
 
 23
 The district court's grant of summary judgment in a habeas proceeding is reviewed de novo. Carriger v. Lewis, 971 F.2d 329, 332 (9th Cir.1992) (en banc).[5] The factual findings underlying that conclusion are reviewed for clear error. Riley v. Deeds, 56 F.3d 1117, 1119 (9th Cir.1995).
 
 A. Privilege Against Self-Incrimination
 
 24
 Belgarde claims that his Fifth Amendment privilege against self-incrimination was violated through the taking of his blood without his consent, and the use of the blood test results at trial to convict him. This argument has no merit.
 
 
 25
 The Fifth Amendment protects Belgarde from "being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966), see also Deering v. Brown, 839 F.2d 539, 541 (9th Cir.1988). However, "the withdrawal of blood and use of the analysis ... did not involve compulsion to these ends." Schmerber, 384 U.S. at 761, 86 S.Ct. at 1830-31.
 
 
 26
 The blood test results, which were based upon blood drawn from Belgarde without his consent, and which ultimately led to his conviction, do not constitute testimonial or communicative evidence that would be inadmissable under the Fifth Amendment. Blood test evidence is "neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner," and therefore its admission is not prohibited by the Fifth Amendment. Schmerber, 384 U.S. at 765, 86 S.Ct. at 1833.
 
 B. Due Process
 
 27
 Belgarde argues that Montana's implied consent law violates the Fourteenth Amendment because it takes away his right to refuse a blood test. Belgarde claims that the removal of his blood while he was unconscious deprived him of his property (blood) without due process of law.
 
 
 28
 The Supreme Court has held that the taking of a blood sample while a person is unconscious by a qualified technician and in a controlled setting does not offend due process because "there is nothing 'brutal' or 'offensive' in the taking of a sample of blood when done ... under the protective eye of a physician." Breithaupt v. Abram, 352 U.S. 432, 435, 77 S.Ct. 408, 410, 1 L.Ed.2d 448 (1957). The Court noted that, even if a person is unconscious when the blood is withdrawn, "the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right." Id.; see also Rise v. State of Oregon, 59 F.3d 1556, 1562-63 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1554, 134 L.Ed.2d 656 (1996) ("The extraction of blood from an individual in a simple, medically acceptable manner, despite the individual's lack of an opportunity to object to the procedure, does not implicate the Due Process Clause.").
 
 
 29
 Here, the district court found that the extraction of Belgarde's blood was performed in a reasonable and medically acceptable manner. The court also found that the police officer was justified in requesting the registered nurse to administer the blood test. These findings are not clearly erroneous. See Riley, 56 F.3d at 1119. Nothing in the record indicates that the taking of Belgarde's blood was accomplished in a "brutal" or "offensive" manner. See Breithaupt, 352 U.S. at 435, 77 S.Ct. at 410. Therefore, even though Belgarde's blood was taken while he was unconscious, his due process rights were not violated through the administration of the blood test.
 
 C. Cruel and Unusual Punishment
 
 30
 Belgarde contends that his sentence constitutes cruel and unusual punishment, and thus is a violation of the Eighth Amendment.
 
 
 31
 Belgarde's argument is meritless. We have held that "[g]enerally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds." United States v. McDougherty, 920 F.2d 569, 576 (9th Cir.1990) (citing United States v. Zavala-Serra, 853 F.2d 1512, 1518 (9th Cir.1988)). Under Montana law, a second D.U.I. offense is punishable by "a fine of not less than $300 or more than $500 and by imprisonment for not less than 7 days, at least 48 hours of which must be served consecutively, or more than 6 months." Mont.Code Ann. § 61-8-714(2). Belgarde's sentence of six months in jail with all but seven days suspended (conditional upon his attendance at an alcohol dependency treatment program) and a $500 fine falls within the range of sentences authorized by the Montana legislature.
 
 
 32
 Additionally, the Eighth Amendment prohibits punishments that are soundly rejected by the " 'evolving standards of decency that mark the progress of a maturing society.' " Harris v. Wright, 93 F.3d 581, 583 (9th Cir.1996) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)). A criminal sentence is unconstitutional under the Eighth Amendment if it is extreme and "grossly disproportionate" to the crime for which defendant has been convicted. Harris, 93 F.3d at 583; United States v. Bland, 961 F.2d 123, 129 (9th Cir.1992).
 
 
 33
 We cannot say that Belgarde's sentence of six months in jail with all but seven days suspended, a $500 fine, and attendance at an alcohol dependency treatment program is "grossly disproportionate" to a second-time D.U.I. conviction. Driving under the influence of alcohol is a serious problem in this country; "[t]he increasing slaughter on our highways, most of which should be avoidable, now reaches ... astounding figures." Breithaupt, 352 U.S. at 439, 77 S.Ct. at 412. Nor is the sentence so severe as to be rejected by the standards of decency in society. Belgarde's arguments to the contrary are without merit.
 
 D. Double Jeopardy
 
 34
 Belgarde apparently argues that each element of his sentence, which consists of jail time, a fine, and mandatory class attendance, constitutes a separate punishment for his offense of D.U.I. Thus, Belgarde claims that he is being punished multiple times for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment.
 
 
 35
 The Double Jeopardy Clause provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Belgarde is correct in his argument that the clause protects against multiple punishments for the same offense. Staatz v. Dupnik, 789 F.2d 806, 808 (9th Cir.1986). However, the Double Jeopardy Clause "serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments...." Gentry v. MacDougall, 685 F.2d 322, 323 (9th Cir.1982) (quoting Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)). Once the appropriate punishment for an offense has been defined by the legislature, "the government may not impose the penalty on the accused more than once." United States v. Scarano, 76 F.3d 1471, 1474 (9th Cir.1996).
 
 
 36
 Here, the Montana Supreme Court applied to Belgarde the punishment for the second time D.U.I. that the legislature of Montana specified should be the punishment for that crime. Belgarde is not being punished multiple times for the same offense; rather, the court sentenced Belgarde to the punishment (albeit a punishment containing several elements) as promulgated by the Montana legislature. The district court found that the fine, jail time, and class attendance constituted one punishment, and we agree. Therefore, Belgarde's sentence does not constitute a violation of the Double Jeopardy Clause.
 
 E. Fourth and Sixth Amendment Claims
 
 37
 Belgarde contends that he was deprived of due process to which he is entitled under the Fourth Amendment because his blood was withdrawn while he was unconscious. Belgarde also asserts that his Sixth Amendment rights were violated because his request for a continuance to enable him to call a witness was denied.
 
 
 38
 However, Belgarde did not raise these claims in his original habeas petition to the district court. "Habeas claims that are not raised in the petition before the district court are not cognizable on appeal." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994). Therefore, Belgarde has waived these claims and we do not consider them in this appeal.
 
 
 39
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 [1]
 Despite the fact that Belgarde is not currently confined, the custody requirement of Section 2254 has been met. See Dow v. Circuit Court of the First Circuit through Huddy, 995 F.2d 922, 923 (9th Cir.1993) (per curiam)
 
 
 [2]
 The Advisory Committee Note following Rule 2 recognizes that, in the case of a habeas petitioner not currently in custody, "no one will have custody of the petitioner in the state of the judgment being attacked," and that in such a case the state attorney general would generally be the one to defend against the action. 28 U.S.C. foll. § 2254, Rule 2 Advisory Committee Note, Subdivision (b)
 
 
 [3]
 The file does contain an order from Magistrate Judge Anderson in Montana, ordering that the Attorney General of Montana be served with a copy of Belgarde's petition. The district court docket sheet indicates that service of the order on the Attorney General of Montana was accomplished by certified mail
 
 
 [4]
 The potential for confusion is evident in the case at hand, where the district court exercised jurisdiction, but the Montana Attorney General was not a named respondent, according to the court docket sheets
 
 
 [5]
 Neither party addresses whether the "new" standard of review found in 28 U.S.C. § 2254(d) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214) should be applied to this case. Therefore, the issue has been waived and we do not consider it on appeal. Miles v. Stainer, 108 F.3d 1109, (9th Cir.1997); see also Huynh v. King, 95 F.3d 1052, 1055 n. 2 (11th Cir.1996) (declining to apply the new § 2254 standard because neither party argued for its application)