**Virginia Dumlao TANIGUCHI, Petitioner–Appellant,**

**v.**

**John Paul SCHULTZ; Kathleen Sawyer; Doris Meissner; John Ashcroft, Attorney General, Respondents–Appellees.**

**Virginia Agustin TANIGUCHI, Petitioner,**

**v.**

**John ASHCROFT, Attorney General, Respondent.**

Nos. 00–16928, 00–71053.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 2001.

Filed Aug. 23, 2002.

As Amended Sept. 25, 2002.

Vincent Chan, Los Angeles, CA, for the petitioner-appellant.

Shelley R. Goad, Office of Immigration Litigation, United States Department of Justice, for the respondents-appellees.

Before RONEY,* HUG, JR. and
THOMAS, Circuit Judges.

**OPINION**

HUG, Circuit Judge.

Virginia Agustin Taniguchi appeals both the Board of Immigration Appeals' denial of her motion to reopen as well as the District Court's denial of Taniguchi's habeas corpus petition. The Immigration Judge ordered Taniguchi removed, and she did not appeal that decision, but subsequently filed a motion to reopen on the grounds that she is a United States citizen. However, because Taniguchi filed her motion more than 90 days following the date of the final administrative decision, the Immigration Judge dismissed her motion as untimely. The BIA affirmed the Immigration Judge's ruling. She then filed a petition for review, which we dismiss for lack of jurisdiction.

Taniguchi also filed a petition for writ of habeas corpus alleging (1) that she is a United States citizen, (2) that the waiver provision of INA § 212(h), 8 U.S.C. § 1182(h) violates equal protection, and (3) that her former attorney was ineffective. The District Court denied Taniguchi's petition. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**I. BACKGROUND**

*A. Petition for Review*

Taniguchi, a native and citizen of the Philippines, was admitted to the United States as an immigrant in July 1973. Since her admission into this country, Taniguchi has been convicted of numerous crimes in Hawaii state court and in United States District Court.

Specifically, in October 1987, Taniguchi pled no contest to the offense of theft in the first degree (three counts) in Hawaii state court and was sentenced to five years imprisonment with each count to run concurrently. In April 1988, she pled guilty to the offense of theft in the first degree (two counts) and attempted theft in the first degree in Hawaii state court, and was sentenced to an extended term of ten years with each of the counts to be concurrent to each other and to any other term she was serving. In January 1996, she was convicted in the United States District Court, District of Hawaii of the offenses of bank fraud in violation of 18 U.S.C. § 1344 (three counts), criminal forfeiture in violation of 18 U.S.C. § 982, submitting a false income tax return in violation of 26 U.S.C. § 7206(1), and use or attempted use of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2). She was also convicted of impersonating a citizen of the United States in violation of 18 U.S.C. § 911.

On the basis of these convictions, the Immigration and Naturalization Service ("INS") charged, in a Notice to Appear dated September 14, 1998, that Taniguchi was removable under three separate grounds: (1) Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), in that, at any time after admission, she had been convicted of an aggravated felony; (2) INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), in that, at any time after admission, she had been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and (3) INA

---

* Honorable Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

§ 237(a)(3)(D), 8 U.S.C. § 1227(a)(3)(D), in that she was an alien who had falsely represented herself to be a citizen of the United States for any purpose or benefit under the INA, or a federal or state law.

The Immigration Judge rendered his oral decision on April 14, 1999 and found Taniguchi removable as charged. The Judge also determined that she was statutorily ineligible for cancellation of removal, under INA § 240A(a), 8 U.S.C. § 1229b(a) based on her status as an aggravated felon.

Instead of filing an appeal to the Board of Immigration Appeals ("BIA"), Taniguchi filed a motion to reopen with the Immigration Judge on or about August 1, 1999. In this motion, she requested that the Immigration Judge reopen her removal proceedings because she could not reach her attorney at that time to determine if he had filed an appeal to the BIA on her behalf and because she believed she was a United States citizen. Taniguchi attached an application for a certificate of citizenship, a Form N–600, to her motion to reopen. On September 8, 1999, the Immigration Judge denied her motion to reopen as untimely because she filed the motion more than ninety days after the date on which the final administrative decision was rendered in the proceedings sought to be reopened. *See* 8 C.F.R. § 3.23(b)(1) (1999). The Immigration Judge did, however, forward Taniguchi's N–600 Form to the INS for adjudication. Although unrelated to this appeal, the INS subsequently denied her application.

On September 8, 1999, Taniguchi appealed the Immigration Judge's decision denying her motion to reopen. On March 6, 2000, the BIA denied her appeal, adopting the Immigration Judge's decision that

the motion to reopen was untimely pursuant to 8 C.F.R. § 3.23(b)(1).[1] She filed a timely petition for review of the BIA's denial of the motion to reopen.

## B. Petition for Writ of Habeas Corpus

On October 20, 1999, Taniguchi filed a Petition for Writ of Habeas Corpus in district court. She made numerous allegations in her petition, including (1) that she is a United States citizen, (2) that INA § 212(h), 8 U.S.C. § 1182(h), impermissibly distinguishes between lawful permanent residents ("LPRs"), like Taniguchi, and non-lawful permanent resident aliens, thus denying her, as a permanent resident, equal protection, and (3) that her previous attorney was ineffective because he failed to inform her about her possible eligibility to apply for INA § 212(h) relief from removal. Taniguchi also requested a stay of removal.

United States District Judge Martin J. Jenkins denied the petition for writ of habeas corpus and the request for a stay of removal on August 17, 2000.[2] Judge Jenkins held that the District Court lacked jurisdiction to make a determination of Taniguchi's claim of citizenship because, under INA § 242(b)(5), 8 U.S.C. § 1252(b)(5), she was required to pursue her citizenship claim via a petition for review in the court of appeals. Judge Jenkins also held that because Taniguchi never applied for a waiver of removal under INA § 212(h), 8 U.S.C. § 1182(h), and therefore, never received a denial of her application, she lacked standing to raise her equal protection claim. Finally, Judge Jenkins held that Taniguchi was not entitled to a grant of the writ on her ineffec-

---

1. On August 9, 2000, the BIA issued an amendatory order to correct the inadvertent omission of Taniguchi's attorney, Mr. Vincent Chan, from the BIA's March 6, 2000 order.

2. Taniguchi does not appeal the district court's denial of the stay of removal.

tive assistance of counsel claim because she did not establish prejudice.

## II. STANDARDS OF REVIEW

■ The decision whether to grant or deny a petition for habeas corpus is reviewed *de novo*. *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir.1995) (citing *Desir v. Ilchert*, 840 F.2d 723, 726 (9th Cir.1988)). Likewise, whether the court must dismiss the petition for review goes directly to the court's subject matter jurisdiction and is therefore subject to *de novo* review. *See Ma v. Reno*, 114 F.3d 128, 130 (9th Cir. 1997); *Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1057 (9th Cir.1996).

## III. DISCUSSION

### A. Petition for Review

■ This court has jurisdiction over petitions for review to "determine whether jurisdiction exists." *Aragon–Ayon v. INS*, 206 F.3d 847, 849 (9th Cir.2000). Therefore, the question of whether one is actually an alien would normally give rise to such jurisdiction. However, Taniguchi's claim of citizenship fails because she has not exhausted her administrative remedies as required by statute.

Under INA § 242(d)(1), 8 U.S.C. § 1252(d)(1), "[a] court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right. . . ." Taniguchi did not raise the issue of citizenship before the IJ in the initial removal proceedings, and she did not appeal the order of removal to the BIA. The matter before us, therefore, is not the order of removal by the IJ, because of the failure to appeal to the BIA. The matter before us is the motion to reopen.

The IJ denied the motion to reopen on the grounds that it was untimely. A motion to reopen must be filed within 90 days of the final order to be timely. *See* 8 C.F.R. § 3.23(b)(1) (1999). The order of removal was issued on April 14, 1999 and the motion to reopen was filed on August 1, 1999, more than 90 days later. On August 9, 2000, the BIA affirmed the IJ's denial of the motion to reopen as untimely for the reasons expressed by the IJ.

In *Socop–Gonzalez v. INS*, 272 F.3d 1176 (9th Cir.2001) (en banc), we held that 8 C.F.R. § 3.2 is subject to equitable tolling and reversed the BIA's denial of a motion to reopen. In that case, however, we concluded that the administrative appeal to the BIA had been exhausted, because the BIA had addressed whether equitable considerations should toll the limitations period set forth in 8 C.F.R. § 3.2. *Id.* at 1186. In Taniguchi's case, equitable tolling was not argued to the BIA nor discussed by the BIA; nor was equitable tolling argued to this court. Thus that issue was not exhausted and furthermore was waived by failure to present it to this court.

### B. Petition for Writ of Habeas Corpus

#### 1. Citizenship

■ The District Court correctly dismissed Taniguchi's citizenship claim for lack of jurisdiction, as such claims must be brought in the court of appeals.

This court has held that 8 U.S.C. § 1252(b)(5) does not foreclose completely the writ of habeas corpus. *Magana–Pizano v. INS*, 200 F.3d 603, 608 (9th Cir. 1999). District courts retain jurisdiction under 28 U.S.C. § 2241 when the petitioner has no other remedy. *Id.* Here, though, § 1252(b)(5) provides a specific remedy. It is the exclusive means of determining U.S. citizenship for aliens in removal proceedings. Thus jurisdiction was lacking in the district court for a determination of citizenship under § 2241 because another statutory remedy is available to establish citizenship.

■ Nonetheless, we have transferred citizenship claims incorrectly brought before a District Court on habeas to this Court pursuant to 28 U.S.C. § 1631. *See Baeta v. Sonchik*, 273 F.3d 1261, 1264 (9th Cir.2001). Section 1631 provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. "The transfer statute authorizes us to transfer these cases to ourselves if: (1) we would have been able to exercise jurisdiction on the date that they were filed in the district court; (2) the district court lacked jurisdiction over the cases; and (3) the transfer is in the interests of justice." *Castro–Cortez v. INS*, 239 F.3d 1037, 1046 (9th Cir.2001).

■ Here, however, transfer is not available for Taniguchi because the first requirement is not met. If an alien in a removal proceeding is ordered removed, but contends that she is a United States citizen, § 1252(b)(5) is the exclusive statutory method of determining the claim of citizenship, and it is brought as a petition for review of a final order of removal. Had there been a final order of removal from which a petition for review could have been properly filed with this court on the date Taniguchi filed her petition for habeas corpus, the habeas corpus petition could conceivably have been considered as a petition for review of the final order of deportation, and thus transferred to the court of appeals under § 1631. However, two problems foreclose such a transfer.

First, Taniguchi failed to exhaust her administrative remedies by not appealing the decision of the IJ to the BIA. "A court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right...." 8 U.S.C. § 1252(d)(1); *see also Castro–Cortez*, 239 F.3d at 1044. Second, even if the IJ's decision could be considered the final order of removal for purposes of § 1252(b), a petition for review would have been untimely as of the date the habeas corpus petition was filed, October 20, 1999.

The IJ's order was filed April 13, 1999. A petition for review, to be timely, must be filed not later than 30 days after the date of the final order of removal. 8 U.S.C. § 1252(b)(1). Thus the petition would have been untimely and there would be no basis for transferring the case to the court of appeals, because the court of appeals would not have been able to exercise jurisdiction on the date that the petition for habeas corpus was filed with the district court.

### 2. INA § 212(h)

INA § 212(h) of the INA provides the Attorney General with discretion to waive certain deportation orders. *See* 8 U.S.C. § 1182(h). Pursuant to that statute, the Attorney General can issue waivers to those persons subject to deportation due to their commission of certain crimes. *Id.* However, the statute precludes this discretion as to waivers for "an alien lawfully admitted for permanent residence if ... since the date of such admission the alien has been convicted of an aggravated felony." *Id.*

Taniguchi argues that this section violates equal protection because it irrationally distinguishes between non-LPR aggravated felons and LPR aggravated felons by allowing non-LPRs to obtain a § 212(h) waiver while disallowing the waiver for LPRs. The District Court, however, dismissed this claim on the grounds that Taniguchi lacked standing. The court held that by failing to apply for the waiver and subsequently receiving a denial, Taniguchi suffered no injury in fact. Accordingly, before we can consider Taniguchi's equal protection claim, we must first consider whether she had standing in the first instance to bring the claim.

### a. Standing

We have consistently held that standing does not require exercises in futility. *See, e.g., Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 499 (9th Cir.1981) (plaintiffs need not exhaust administrative remedies when doing so would be futile). For example, in the context of billboard operators, this Court ruled that they "have standing to challenge[a] permit requirement, even though they did not apply for permits, because applying for a permit would have been futile.... because ... the ordinance flatly prohibited [their] signs." *Desert Outdoor Adver., Inc. v. City of Moreno Valley,* 103 F.3d 814, 818 (9th Cir.1996).

■ Here, the statute in question unambiguously precludes Taniguchi, as an LPR convicted of an aggravated felony, from the discretionary waiver. To apply for the waiver would have been futile on Taniguchi's part and, therefore, does not result in a lack of standing. We can, therefore, consider Taniguchi's equal protection claim.

### b. Equal Protection

■ Taniguchi argues that INA § 212(h) violates her right to equal protection by providing a waiver of deportation to non-LPR aggravated felons while denying such a waiver to LPR aggravated felons. Indeed, aliens are entitled to the benefits of equal protection. *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). However, Congress' power over the expulsion and exclusion of aliens is very broad. *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); *see also Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) ("Over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens.") (internal quotation marks and alteration omitted). As a result, judicial inquiry into immigration legislation is very limited. *Hampton v. Mow Sun Wong,* 426 U.S. 88, 101–02 n. 21, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976) (citing *Fong Yue Ting v. United States,* 149 U.S. 698, 711–14, 13 S.Ct. 1016, 37 L.Ed. 905 (1893)).

■ Accordingly, a statute that limits the relief available to a certain class of aliens will be "valid unless wholly irrational." *Perez–Oropeza v. INS,* 56 F.3d 43, 45 (9th Cir.1995) (internal quotation marks omitted). If there is "a 'facially legitimate and bona fide reason' for enacting a discriminatory rule," the statute must be upheld. *United States v. Viramontes–Alvarado,* 149 F.3d 912, 916 (9th Cir.1998) (quoting *Ablang v. Reno,* 52 F.3d 801, 804 (9th Cir.1995)). Furthermore, it is irrelevant whether or not the justification proffered by the INS was in fact the reason that led to the legislative classification in the first instance. *Friend v. Reno,* 172 F.3d 638, 646 (9th Cir.1999).

■ We agree with the Seventh and Eleventh Circuits that a rational basis does exist for denying the § 212(h) waiver to aggravated felon LPRs but not to other aliens. *Moore v. Ashcroft,* 251 F.3d 919, 925–26 (11th Cir.2001); *Lara–Ruiz v. INS,*

241 F.3d 934, 947–48 (7th Cir.2001). These courts noted that LPRs enjoy substantial rights and privileges not shared by other aliens, and therefore "it is arguably proper to hold them to a higher standard and level of responsibility than [non LPRs]." *Moore*, 251 F.3d at 925; *accord Lara–Ruiz*, 241 F.3d at 947. LPRs generally have stronger ties to the United States through both employment and family relationships. Those LPRs, then, that commit aggravated felonies have demonstrated that these ties, in addition to all of their privileges as an LPR, were insufficient to deter this criminal conduct. *Lara–Ruiz*, 241 F.3d at 948. Therefore, Congress could have reasoned that aggravated felon LPRs "pose a higher risk for recidivism than illegal aliens who did not have all of the benefits of legal permanent resident status to deter them from committing their crimes," *Moore*, 251 F.3d at 925. Accordingly, aggravated felon LPRs could be viewed as less deserving of a "second chance" than non-LPRs. *Lara–Ruiz*, 241 F.3d at 948.

In addition, one of Congress' goals in restricting the § 212(h) waiver was to expedite the removal of criminal aliens from the United States. *Id.* at 947. Eliminating the availability of § 212(h) relief for LPRs prevents such an alien from applying to adjust his status while still within the U.S., which would subvert Congress' intent to make such aliens immediately removable. *See id.*

Although it might have been "wiser, fairer, and more efficacious for Congress to have eliminated § 212(h) relief for non LPR aggravated felons as well," the decision of Congress was nonetheless a rational "first step" towards the legitimate goal of rapidly removing criminal aliens. *Id.;* *see also Butler v. Apfel*, 144 F.3d 622, 625 (9th Cir.1998) ("Reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.") (quoting *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955)).

Therefore, Taniguchi's equal protection claim fails because the INS has advanced a rational explanation for the difference in treatment between LPR and non-LPR aggravated felons.

### 3. Ineffective Assistance of Counsel

Taniguchi alleges ineffective assistance of counsel because of her attorney's failure to advise her of the § 212(h) waiver and to file an administrative appeal. Both arguments fail.

#### a. Failure to Advise of § 212(h) Waiver

 To show ineffective assistance of counsel, a party must demonstrate that the actions of his/her attorney resulted in prejudice to the party. *See Castillo–Perez v. INS*, 212 F.3d 518, 527 n. 12 (9th Cir. 2000) (citing *Getachew v. INS*, 25 F.3d 841, 845 (9th Cir.1994)); *Mohsseni Behbahani v. INS*, 796 F.2d 249, 250–51 (9th Cir. 1986). A party must prove prejudice by alleging facts that permit the court to infer that competent counsel would have acted otherwise. *Id.* at 251. Finally, the Second Circuit has ruled that there can be no showing of prejudice if the relief was unavailable to the alien. *United States v. LaPlante*, 57 F.3d 252, 253 (2d Cir.1995). As an LPR, Taniguchi was statutorily precluded from applying for the § 212(h) waiver. Accordingly, Taniguchi's attorney was not required to inform her of a waiver for which she was ineligible.

#### b. Failure to Appeal

 On appeal of the denial of her habeas petition, for the first time, petitioner alleges ineffective assistance of counsel because her former attorney failed to file an administrative appeal. However, be-

cause Taniguchi failed to raise this argument at the District Court level, she has waived it. *See United States v. Flores–Payon,* 942 F.2d 556, 558 (9th Cir.1991) (citing *United States v. Whitten,* 706 F.2d 1000, 1012 (9th Cir.1983)).

■ We have, however, found three narrow exceptions to this pleading requirement: 1) there exist exceptional circumstances as to why the issue was not raised at the trial court, 2) the new issue arises while the appeal is pending because of a change in the law, or 3) the issue presented was purely one of law and the opposing party would suffer no prejudice as a result of the failure to raise the issue in the trial court. *Flores–Payon,* 942 F.2d at 558 (citing *United States v. Carlson,* 900 F.2d 1346, 1349 (9th Cir.1990)).

Taniguchi's failure to raise the ineffective assistance of counsel claim as to the failure to appeal falls into none of these three categories. The fact that Taniguchi's previous attorney did not file an administrative appeal was a fact that was known at the time petitioner filed her petition for habeas corpus in the District Court. No exceptional circumstances prevented Taniguchi from making this argument in the District Court, the issue did not arise while appeal was pending because of a change in the law, nor is the issue one purely of law; it is a factual question. As such, Taniguchi's claim that she received ineffective assistance of counsel due to her previous attorney's failure to file an administrative appeal is an issue that has been waived.

## IV. CONCLUSION

Based on the foregoing, the petition for review is DISMISSED and the district court's order is AFFIRMED.