**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DARRIS YOUNG,
              *Petitioner-Appellant,*

              v.

DAVID L. RUNNELS, Warden,
              *Respondent-Appellee.*

No. 03-16859

D.C. No.
CV-01-01427-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
April 11, 2005—San Francisco, California

Filed January 23, 2006

Before: Warren J. Ferguson, John T. Noonan, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Ferguson;
Concurrence by Judge Noonan

865

## COUNSEL

A.J. Kutchins, Berkeley, California, for the petitioner-appellant.

Gregg E. Zywicke, Deputy Attorney General for the State of California, San Francisco, California, for the respondent-appellee.

## OPINION

FERGUSON, Circuit Judge:

Petitioner-Appellant Darris Young, a California state prisoner, appeals the District Court's denial of his 28 U.S.C. § 2254 habeas petition challenging his conviction for armed robbery and felony evasion. Young contends that his trial attorney's disciplinary problems rendered her presumptively unable to provide effective assistance, thereby warranting a per se reversal of his conviction under *United States v. Cronic*, 466 U.S. 648 (1984). Young further contends that his trial attorney's baseless lawsuit against various public officials, including the Alameda County District Attorney (DA), for allegedly participating in a pedophile ring created an actual conflict of interest under *Cuyler v. Sullivan*, 446 U.S. 335 (1980). We uphold the state court's resolution of Young's ineffective assistance claim since *Strickland v. Washington*, 466 U.S. 668 (1984), rather than *Cronic*, governs this claim, and Young fails to show prejudice under *Strickland*. Further, we find that Young has waived his conflict of interest claim by not raising it before the District Court. *See Belgarde v. Montana*, 123 F.3d 1210, 1216 (9th Cir. 1997). Accordingly, we affirm the District Court's denial of Young's habeas petition.

## I. BACKGROUND

### A. Pre-Trial and Trial Proceedings

On July 8, 1995, Young was apprehended after a high-speed car chase and charged with armed robbery and felony evasion. Young, positively identified by two witnesses, waived his *Miranda* rights and confessed to robbing a Safeway store. Young's two prior robbery convictions were submitted as "strikes" against him under California's Three Strikes law, which imposes a minimum sentence of twenty-five years to life on defendants previously convicted of two or more "serious" or "violent" felonies. Cal. Penal Code §§ 667(e)(2)(A), 1170.12(c)(2)(A). Prior to trial, the Alameda County DA's office offered Young a determinate prison term of sixteen years for pleading guilty. Young rejected this offer, as well as a second offer for a term of twelve years, four months. Later, he regretted his decision and had his court-appointed public defender request a determinate sentence, which the DA's office declined to extend.

On March 18, 1997, Young's family retained Kathryn Jo-Anne Dixon as his counsel. Unbeknownst to Young or his family, State Bar disciplinary charges alleging forty-four counts of misconduct were pending against Dixon at the time she was hired. Dixon was also engaged in a baseless lawsuit accusing numerous public officials, including the Alameda County DA, of being members of a pedophile ring that kidnapped local schoolchildren. As Young's counsel, Dixon moved to suppress the field lineup conducted after the robbery as unduly suggestive, as well as a prejudicial statement Young had made in violation of his *Miranda* rights. She argued unsuccessfully to exclude the use of Young's prior convictions for impeachment, but did secure a bifurcated trial on the truth of those convictions. Dixon also twice requested of Deputy DA Matt Golde a determinate sentence, which Golde refused to extend. At the close of the prosecution's evidence, Young offered to plead guilty, but withdrew the offer

when Dixon advised him that it might not affect the length of his sentence. On June 16, 1997, the jury convicted Young of armed robbery and felony evasion and, in a separate proceeding, found his prior convictions to be true.

On July 9, 1997, before Young's sentencing had begun, the California State Bar Court recommended Dixon's disbarment. The Bar Court found that Dixon took fees from and then stopped communicating with six clients; made false statements to the probate court, to an administrative tribunal, and to a superior court; engaged in acts of moral turpitude, dishonesty, or corruption; and threatened or made false accusations against four attorneys, a former client, a former paralegal, the State Bar's trial counsel, and the Bar Court itself. Dixon was eventually disbarred on March 15, 1999.

## B.    Sentencing and Appeals

Because Dixon became an inactive member of the bar on July 16, 1997, the trial court reappointed a public defender to represent Young during sentencing. The court first imposed a concurrent twenty-five years to life three-strikes sentence for Young's two offenses, with a determinate term of eleven years for enhancements. Later, pursuant to its discretion under Cal. Penal Code § 1385(a), the trial court struck one of Young's prior convictions and imposed a determinate sentence of twenty years. Young simultaneously filed a direct appeal and state habeas petition alleging that Dixon suffered from a conflict of interest, that she failed to pursue plea negotiations, and that the State Bar proceedings rendered her presumptively incapable of providing effective assistance. The California Court of Appeal, unswayed by Young's arguments, denied relief on December 27, 1999, and the California Supreme Court denied Young's petition for review on April 12, 2000. Young timely filed a federal habeas petition in which he argued that Dixon's failure to disclose her pending disciplinary charges amounted to an actual conflict of interest, and that the State Bar's finding that Dixon was unfit to prac-

tice law established per se ineffective assistance under *Cronic*. The District Court denied the petition on August 30, 2002, and this appeal timely followed.

## II.  STANDARD OF REVIEW

We review de novo the District Court's denial of Young's § 2254 habeas petition. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). We may grant habeas relief to a person in state custody if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The state court's findings of fact are presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

A state court decision is contrary to Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an unreasonable application of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. In applying the foregoing standards, we review the "last reasoned decision" by the state court, *Robinson*, 360 F.3d at 1055, which in this case is the California Court of Appeal's denial of Young's state habeas petition.

## III.  DISCUSSION

### A.  Ineffective Assistance of Counsel

Young contends that he is entitled to § 2254 relief because the California Court of Appeal applied the wrong legal stan-

dard to analyze his claim that Dixon's pending disciplinary proceedings rendered her assistance constitutionally deficient. We disagree and uphold the state court's resolution of Young's ineffective assistance claim under *Strickland*, rather than *Cronic*, as neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

**[1]** To prevail on a Sixth Amendment ineffective assistance claim, a defendant must show that counsel's representation "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. *See also Bell v. Cone*, 535 U.S. 685, 695 (2002) (explaining that "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable' " (quoting *Strickland*, 466 U.S. at 687)).

**[2]** In *Cronic*, the Supreme Court carved out certain exceptions to the general *Strickland* rule, holding that in limited situations the defendant need not show prejudice, as required under *Strickland*. *See Cronic*, 466 U.S. at 658. Specifically, prejudice may be presumed when the defendant is "denied counsel at a critical stage of his trial," *id.* at 659, "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," *id.*, or "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial," *id.* at 659-60. But apart from circumstances of this magnitude, "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 n.26.

Young contends that *Cronic* governs his ineffective assistance claim because representation by an attorney whom the

State Bar has found to be unfit, and who is eventually disbarred, constitutes a constructive denial of counsel. Though Dixon was not disciplined until after Young's trial had concluded, the grounds for that discipline stemmed from events that occurred prior to Dixon's involvement in Young's case. Therefore, Young argues, the State Bar Court's subsequent finding of unfitness rendered Dixon's earlier assistance to Young per se ineffective.

**[3]** Young's argument that *Cronic* rather than *Strickland* governs his ineffective assistance claim has already been rejected by this Court. *See United States v. Mouzin*, 785 F.2d 682, 696-98 (9th Cir. 1986). As we suggested in *Mouzin*, a lawyer can be disciplined for a variety of reasons — merely because he is subject to disciplinary proceedings while representing a client does not mean that he is presumptively incapable of providing effective assistance. *Cf. id.* at 698. Moreover, the situation here is positively distinguished from *Mouzin* to the extent that Dixon remained in good standing throughout her representation of Young, whereas the attorney in *Mouzin* was disciplined mid-trial, but continued to represent the defendant. Even in those circumstances, this Court held that *Strickland*, not *Cronic*, governed, for an attorney's suspension or disbarment does not invite "a per se rule that continued representation in an ongoing trial is constitutionally ineffective." *Id.* Rather, we found it reasonable to treat such cases under the general rule requiring a showing of specific errors and prejudice, for if the discipline rendered is indicative of counsel's substandard abilities, then that deficiency should be manifested in counsel's courtroom behavior and trial conduct. Accordingly, we agree with the District Court that the state court's decision to apply *Strickland* and not *Cronic* to the present case was not contrary to clearly established federal law under § 2254(d)(1).

We turn next to whether the state court's resolution of Young's ineffective assistance claim on the merits, under *Strickland*, involved an unreasonable application of clearly

established Supreme Court precedent. We examine the prejudice prong of the *Strickland* test first. *See Strickland*, 466 U.S. at 697 (noting that courts may consider either prong of the test first, and need not address both prongs if the defendant fails under one). To "affirmatively prove prejudice," a defendant must demonstrate a reasonable probability that, but for counsel's alleged errors, the results in his case would have been different. *Id.* at 694; *see also Williams*, 529 U.S. at 391-93. In assessing the probability of a different outcome, a court must consider the "totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.

**[4]** Young argues that, but for Dixon, the outcome in his case would have been different because he would have pled guilty and thus received a lesser sentence than the twenty years he ultimately obtained. Given the facts of this case, Young fails to meet his burden of establishing a reasonable probability that he would have received a more lenient sentence by pleading guilty. Before hiring Dixon, Young had already rejected two plea offers from the DA, one for a determinate term of sixteen years, and another for a term of twelve years, four months. Subsequently, both Young's first attorney, the public defender, and Dixon tried to negotiate determinate sentences from the DA's office, but were rebuffed. As Deputy DA Golde explained to the trial court, the DA had reviewed Young's case and had declined to extend anything less than twenty-five years to life. By the time Dixon entered the case, the only available disposition from the DA's point of view was an indeterminate three-strikes term of at least twenty-five years to life. We therefore find that Young fails to meet his burden of showing prejudice and his ineffective assistance claim based on Dixon's pending disciplinary proceedings fails.

## B.  Conflict of Interest

**[5]** Young also contends that Dixon's baseless lawsuit against the Alameda County DA for participating in a

pedophile ring created an actual conflict of interest under *Cuyler*, 446 U.S. 335. Assuming *arguendo* that the Certificate of Appealability encompasses this claim, Young has waived it by failing to raise it before the District Court. *See Belgarde v. Montana*, 123 F.3d 1210, 1216 (9th Cir. 1997) (noting that "[h]abeas claims that are not raised in the petition before the district court are not cognizable on appeal" (internal quotation marks omitted)). Whereas Young argued to the District Court a conflict of interest theory based on Dixon's failure to disclose her pending disciplinary proceedings, he now argues to this Court a different claim based on Dixon's suit against the Alameda County DA.

**[6]** Nor does Young's failure to raise this alternative conflict of interest claim fall under any exception to the waiver rule. *See*, *e.g.*, *Taniguchi v. Schultz*, 303 F.3d 950, 959 (9th Cir. 2002) (outlining three exceptions to the waiver rule). First, there are no "exceptional circumstances as to why the issue was not raised at the trial court." *Id*. Like the petitioner in *Taniguchi*, Young raised his alternative conflict of interest claim in his state habeas petition and so could have raised it in his federal habeas petition. Nor was there any change in law excusing Young's failure to raise this claim earlier. Finally, Young's new claim is not a purely legal question easily resolvable without a factual record, where the "opposing party would suffer no prejudice as a result of the failure to raise the issue in the trial court." *Id*. As such, we find that Young's conflict of interest claim based on Dixon's suit against the Alameda County DA is not cognizable on appeal.

## IV.  CONCLUSION

For the foregoing reasons, we uphold the District Court's denial of Young's § 2254 habeas petition.

**AFFIRMED.**

NOONAN, Circuit Judge, concurring:

In proceedings brought by the State Bar of California that began in August 1995, and concluded in June 1997, a state bar judge made these findings about the lawyer who in June 1997 represented Young in his state trial for armed robbery:

1.  The lawyer had falsely charged opposing counsel in a civil suit with being a "champion of the Emeryville pedophile ring," an enterprise which the lawyer described as "operated by organized crime."

2.  The lawyer spoke to another opposing counsel representing a government agency, "yelling and talking about a child pornography ring" and told her, "You need to be careful — you better remember what happened to Damien Gaines." The reference was to a murdered analyst for that counsel's agency.

3.  The lawyer called her own former paralegal "a thief and a liar" and said that she would "get [her]" or "kill [her]." The lawyer kept calling the paralegal until the latter unplugged her phone.

4.  The lawyer falsely accused a former client of terrorism and of stalking her. She accused both him and his new counsel of being "supremacist militia members."

5.  During the proceedings before the state bar court, the lawyer "repeatedly screamed at the Court, refused to follow rulings and directions, and made direct threats toward the Court and Trial Counsel . . . . [Her conduct] "caused the Court the gravest concern that [she] is not capable of conducting herself properly in *any* court of law." (emphasis in original).

6.  The state bar judge added:

"While the Court appreciates the difficulty of representing oneself, it does not justify an attorney's abandoning the most basic elements of appropriate courtroom behavior and engaging in disruptive and offensive conduct. Again, [she] seems to have no insight that such actions are inappropriate and must be curtailed."

7. The state bar judge concluded:

"Respondent's complete lack of insight into the wrongfulness of her actions is reprehensible. In vigorously defending her position, Respondent demonstrates that she does not fully appreciate the distinctions between right and wrong. Her erratic outbursts and lack of discernment during court proceedings constitute a danger to the public and to the legal profession."

Despite these findings, the lawyer — as the state court of appeals remarked in Young's case — remained "a fully licensed member of the bar" until she was formally disbarred on July 9, 1997.

Subsequent to these proceedings, the disbarred lawyer spoke about this case to Young's new counsel, a public defender, who filed this declaration in this case:

"The reference to the 'pedophile ring' is nothing new to persons familiar with [the lawyer's] conspiracy theories. For the past couple of years, she has been known to make accusations that various officials, including the Alameda County District Attorney, have conspired to protect a 'pedophile ring' operating in Emeryville. In the one phone conversation I was able to have with [her] after being assigned to represent the defendant in this case, she declared that the State Bar proceedings were engineered by Tom Orloff because she had exposed his role in the 'Emeryville pedophile ring' and that 'Orloff sent his pansy Dave Hollister to testify against me'."

It is conceded by all that if Darris Young had been represented by a college student or a cobbler or counsel not admitted to the California bar he would have been denied his Sixth Amendment right to counsel. But his case is different because he was represented by a fully licensed member of the California bar whom the courts of California took nearly two years to remove from a position where she could harm the public, the courts, and her clients! A fully licensed lawyer with her head full of fantasies and "with complete lack of insight into the wrongfulness of her actions" was counsel enough to satisfy the Sixth Amendment! As Judge Ferguson's opinion indicates, precedent apparently requires this bizarre conclusion. Only the Supreme Court of the United States can eliminate this cruel parody of the right to counsel.