FERGUSON, Circuit Judge.
Patricia Ann Cordes (“Cordes”), a native and citizen of the United Kingdom, appeals the District Court’s denial of her 28 U.S.C. § 2241 habeas petition challenging the constitutionality of her final order of removal. Cordes pled guilty to dissuading a witness with threat of force and to inducing false testimony, in violation of sections 136.1(c)(1) and 137(c) of the California Penal Code, respectively. The Board of Immigration Appeals (“BIA”) determined that Cordes’s conviction constituted an aggravated felony under the amended definition of aggravated felony in section 321 of the Illegal Immigration Reform and Immigrant Responsibility Act (“IIRIRA”), Pub.L. No. 104-208, 110 Stat. 3009-546 (Sept. 30, 1996), and ordered her removed.
On appeal, Cordes contends that the District Court erred when it (1) applied retroactively the amended definition of aggravated felony under sections 321(a)(3) and 321(a)(ll) of IIRIRA; (2) rejected her due process challenge to the retroactive application of the amended aggravated felony definition; and (3) denied her equal protection challenge to the unavailability of relief from removal under section 212(c) of the Immigration and Nationality Act (“INA”), Pub.L. No. 82-414, 66 Stat. 163 (June 27, 1952) (hereinafter, “section 212(c)”).[1]
*892 We find that like the petitioner in United States v. Velasco-Medina, 305 F.3d 839 (9th Cir.2002), cert. denied, 540 U.S. 1210, 124 S.Ct. 1488, 158 L.Ed.2d 136 (2004), Cordes does not fit within the exception to section 304(b) of IIRIRA set forth in INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Cordes could not have had settled expectations as to the continued availability of section 212(c) relief at the time she entered her guilty plea for non-deportable offenses because the passage of section 440(d) of the Antiterrorism and Effective Death Penalty Act (“AEDPA”), Pub.L. No. 104-32, 110 Stat. 1214 (April 24, 1996), predated her conviction. In addition, we conclude that the retroactive application of the amended aggravated felony definition under section 321 of IIRIRA is supported by a rational basis, and therefore does not violate the Due Process Clause of the Constitution.
Nevertheless, we sustain Cordes’s equal protection challenge because the current judicially defined limits to the availability of section 212(c) relief post-IIRIRA, as applied by the Bureau of Immigration and Customs Enforcement,[2] create an irrational result, namely affording discretionary relief from removal to legal permanent residents who have committed worse crimes than similarly situated permanent residents like Cordes.
I. JURISDICTION
While this case was pending, Congress enacted the Real ID Act of 2005, Pub.L. No. 109-13, 199 Stat. 231, 310-11 (amending 8 U.S.C. § 1252) (May 11, 2005). The Act amends the INA by eliminating federal habeas jurisdiction in favor of petitions for review that raise “constitutional claims or questions of law.” Id. at § 106(a)(1). In accordance with Alvarez-Barajas v. Gonzales, 418 F.3d 1050 (9th Cir. Aug. 11, 2005), we construe Cordes’s habeas petition as if it were a timely filed petition of review with this court.[3] We therefore review the BIA’s decision, not the District Court’s order. Id.
II. BACKGROUND AND PROCEDURAL HISTORY
Cordes was born on May 9, 1952 in Scotland. She entered the United States legally at the age of eighteen and became a permanent resident on February 3, 1972. Since then, she has lawfully resided in the United States and has raised four U.S. citizen children. In the over thirty years that she has been in the United States, she has left the country only a handful of times to visit her mother in Scotland.
*893 On May 30, 1996, Cordes pled guilty to dissuading a witness from testifying with threat of force and inducing false testimony. The circumstances of Cordes’s offenses involved attempting to persuade her daughter — a victim of molestation — to retract allegations against Cordes’s former boyfriend. Cordes was sentenced to two years in prison followed by probation. As of her conviction date, Cordes’s offenses were misdemeanors and did not constitute an aggravated felony or subject her to deportation. Accordingly, Cordes was ineligible for section 212(c) relief since it was only available for permanent residents who faced deportation.
On April 24, 1996, one month before Cordes’s conviction, Congress passed section 440(d) of AEDPA, which made all persons designated as aggravated felons ineligible for section 212(c) relief. On Cordes’s conviction date, May 30, 1996, section 440(d) of AEDPA had no effect on her deportability because the offenses to which she pled guilty did not constitute an aggravated felony and, thereby, posed no deportation consequences.
On September 30, 1996, four months after Cordes’s conviction, Congress passed IIRIRA. Section 321 of IIRIRA expanded the definitions of aggravated felonies in 8 U.S.C. §§ 1101(a)(43)(F) and 1101(a)(43)(S). For crimes of violence, the required minimum term of imprisonment imposed was lowered from 5 years to 1 year. IIRIRA § 321(a)(3). Similarly, an “offense relating to obstruction of justice, perjury, or subornation of perjury, or bribery of a witness,” which formerly required a potential sentence of 5 years imprisonment or more to qualify as an aggravated felony, was changed to require a term of imprisonment of “at least one year.” IIR-IRA § 321(a)(ll). Moreover, section 304(b) of IIRIRA repealed section 212(c) relief altogether and replaced it with cancellation of removal, a more limited form of discretionary waiver from removal, which was also made unavailable to aggravated felons. See 8 U.S.C. § 1229b(a).
On December 17, 1996, having been released from custody, Cordes was arrested for violating section 23152(a) of the California Vehicle Code, driving under the influence of alcohol. She was convicted of the offense on February 19, 1997, and her probation was reinstated. On October 10, 2000, Cordes again violated probation for driving under the influence of alcohol. This time her probation was revoked and she was returned to state custody.
On January 31, 2001, the INS brought removal proceedings against Cordes, charging her as an aggravated felon under the new IIRIRA reclassification of aggravated felony. The INS contended that (1) her offenses at the time of her May 30, 1996 guilty plea now could be recharacter-ized as constituting an aggravated felony, (2) she was consequently ineligible for section 212(c) relief under section 440(d) of AEDPA since she was an aggravated felon, and (3) she was further ineligible for cancellation of removal under section 304(b) of IIRIRA as an aggravated felon.
On October 10, 2001, an Immigration Judge (“IJ”) ordered Cordes removed from the United States but granted her section 212(c) relief because, in the IJ’s view, she fit within an exception to section 304(b) of IIRIRA that the Supreme Court carved out in St. Cyr. 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347. There, the Supreme Court held that section 212(c) relief was available for aliens who were eligible for such relief at the time of their convictions and who relied on this relief in entering guilty pleas. The INS timely appealed the IJ’s order, and on February 21, 2003, the BIA overruled the IJ’s decision and found Cordes deportable and ineligible for section 212(c) relief in *894 accordance with this Circuit’s decision in Velasco-Medina. 305 F.3d 839.
When Cordes challenged the BIA’s decision, 8 U.S.C. § 1252(a)(2)(C) precluded direct appellate review of a BIA’s removal decision for “a crime involving moral turpitude.” 8 U.S.C. § 1182(a)(2)(A)(i)(I). Cordes, therefore, had filed a 28 U.S.C. § 2241 habeas petition in the District Court on May 10, 2004 asking for a stay of removal. Specifically, she had challenged the retroactive application of sections 321(a)(3) and 321(a)(ll) of IIRIRA and raised an equal protection challenge. The District Court had denied her petition on April 8, 2004, and this timely appeal had followed.
III. DISCUSSION
We review de novo the BIA’s decision regarding purely legal questions. Simeonov v. Ashcroft, 371 F.3d 532, 535(9th Cir.2004). We proceed to decide the constitutional claims raised in Cordes’s habeas petition, which is now construed as a timely filed petition for review.
A. Retroactivity
Cordes first challenges the retroactive application of sections 321(a)(3) and 321(a)(ll) of IIRIRA and the resulting unavailability of section 212(c) relief under St. Cyr. 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347.
Sections 321(a)(3) and 321(a)(ll) of IIR-IRA reduced the sentencing requirement for an “aggravated felony” from “at least 5 years” to “at least one year.” Section 321(b) of IIRIRA made the amended definition of aggravated felony retroactive, “applying] regardless of whether the conviction was entered before, on, or after [September 30, 1996].” This Circuit subsequently upheld the retroactive application of sections 321(a)(3) and 321(a)(ll) of IIRIRA. See Aragon-Ayon v. INS, 206 F.3d 847, 853 (9th Cir.2000) (‘We are satisfied that Congress intended the 1996 amendments to make the aggravated felony definition apply retroactively to all defined offenses whenever committed, and to make aliens so convicted eligible for deportation notwithstanding the passage of time between the crime and the removal order.”).
The repeal of section 212(c) by section 304(b) of IIRIRA, however, was not made explicitly retroactive. Aliens who had relied upon the existence of section 212(c) relief in pleading guilty to a crime remain entitled to its protection even after its elimination under section 304(b) of IIRI-RA. Indeed, in St. Cyr, the Supreme Court held that “[section] 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for [such] relief at the time of their plea under the law then in effect.” 533 U.S. at 326, 121 S.Ct. 2271. Enrico St. Cyr had pled guilty to a state law drug offense ten years after becoming a U.S. permanent resident. Id. at 293, 121 S.Ct. 2271. His guilty plea rendered him deportable, so he was eligible for section 212(c) relief under pre-IIRIRA law. Id. Before the INS could bring removal proceedings against him, however, Congress passed section 440(d) of AEDPA and section 304(b) of IIRIRA, which effectively precluded granting St. Cyr section 212(c) relief because he had committed a crime that had been reclassified as an aggravated felony. Id. at 297, 121 S.Ct. 2271. Because he had expected to be eligible for section 212(c) relief when he pled guilty, the Supreme Court held that he was eligible for such relief in spite of the new legal landscape. Id. at 321, 121 S.Ct. 2271.
This Circuit has clearly limited the St. Cyr exception. In Velasco-Medina, we *895 held that section 212(c) relief was unavailable for an alien who pled guilty after the enactment of section 440(d) of AEDPA but before the enactment of IIRIRA. 305 F.3d 839. The court first reasoned that, unlike St. Cyr, Velasco-Medina had not developed “settled expectations” in section 212(c) relief because he was not deporta-ble, and therefore ineligible for section 212(c) relief, at the time of his plea bargain. Id. at 849. The court went on to note that “[Section 440(d) ] of AEDPA provided Velasco-Medina with fair notice that discretionary relief under [section] 212(c) would be unavailable in the event his conviction was reclassified as an aggravated felony. To the extent [Velasco-Medina] anticipated the continued availability of [section] 212(c) relief after his guilty plea, his expectations were neither reasonable nor settled under St. Cyr.” Id. at 850.
Like Velasco-Medina, Cordes pled guilty to her offenses after the passage of section 440(d) of AEDPA and could not have been eligible for section 212(c) relief because at the time of her conviction her offenses did not render her deportable. Moreover, as it did for Velasco-Medina, section 440(d) of AEDPA placed Cordes on notice that if her conviction were reclassified as an aggravated felony, she would be ineligible for section 212(c) relief. Thus, Cordes’s expectations as to the continued availability of section 212(c) relief were, like those of Velasco-Medina, neither reasonable nor settled under St. Cyr.[4]
B. Due Process
Cordes next contends that sections 321(a)(3) and 321(a)(ll) of IIRIRA retroactively reclassified her from a permanent resident to a removable aggravated felon without any rational basis and without furnishing her any fair notice or repose.
The Due Process Clause of the Fifth Amendment -forbids Congress from enacting legislation expressly made retroactive when the “ ‘retroactive application^ the statute] is so harsh and oppressive as to transgress the constitutional limitation.’ ” Welch v. Henry, 305 U.S. 134, 147, 59 S.Ct. 121, 83 L.Ed. 87 (1938). Due process “protects the interests in fair notice and repose that may be compromised by retroactive legislation.” Lcmdgraf v. USI Film Prods., 511 U.S. 244, 266, 114 S.Ct. 1483 (1994).
While this court has held that section 321 of IIRIRA overcomes the presumption against retroactive legislation because “Congress has clearly manifested an intent for the amended definition of aggravated felony to apply retroactively,” Aragon-Ayon, 206 F.3d at 851, we have not decided whether the definition’s retroactive application violates due process.
We agree with the Second Circuit that the retroactive application of section 321 of IIRIRA is rationally related to a legitimate governmental purpose. “Congress has a legitimate interest in protecting society from the commission of aggra *896 vated felonies ..., and legislation that deports aliens who presently commit or who have committed those acts in the past is a rational means of furthering that interest.” Kuhali v. Reno, 266 F.3d 93, 111 (2d Cir.2001) (citing Hamama v. INS, 78 F.3d 233, 236 (6th Cir.1996)). This conclusion comports with our decision in United States v. Yacoubian, 24 F.3d 1, 8 (9th Cir.1994), which held that the retroactive application of 8 U.S.C. § 1251(a)(2)(C), as modified in 1990, to deport an alien on the basis of a 1982 firearms offense did not violate the Due Process Clause. We reasoned that retroactive application of the amended statute was rationally related to a legitimate governmental interest because it “results in uniform application of the deportation provision to aliens convicted of firearms offenses, no matter when those convictions occurred.” Id. Yacoubian also recognized “Congress’ undoubted power to exclude undesirable aliens from this country even if that determination is made long after a crime was committed.” Id. at 8 n. 3 (citing Mahler v. Eby, 264 U.S. 32, 38-40, 44 S.Ct. 283, 68 L.Ed. 549 (1924); Mulcahey v. Catalanotte, 353 U.S. 692, 694, 77 S.Ct. 1025, 1 L.Ed.2d 1127 (1957)).[5]
C. Equal Protection
Finally, Cordes brings an equal protection challenge to the INS’ decision, based on St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347, and Velasco-Medina, 305 F.3d 839, to afford section 212(c) relief to permanent residents who retroactively became aggravated felons, but who had committed deportable offenses at the time of their conviction, and not to those permanent residents who retroactively became aggravated felons, but who had not committed deportable offenses at the time of their convictions.
The Fourteenth Amendment mandates that “[n]o State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws.” U.S. Const, amend. XIV, § 1. This guarantee of equal protection applies to the federal government through the Fifth Amendment Due Process Clause. See Catholic Soc. Servs., Inc. v. INS 232 F.3d 1139, 1152 n. 5 (9th Cir.2000) (en banc) (citation omitted) (“The Fifth Amendment has no Equal Protection Clause. An equal protection claim under the Fifth Amendment is brought under the equal protection component of the Due Process Clause.”).
The Equal Protection Clause applies to aliens. See Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). The “disparate treatment of similarly situated aliens under the immigration laws” implicates the guarantee of equal protection. Aguirre v. INS, 79 F.3d 315, 317 (2d Cir.1996). The government must therefore demonstrate a rational basis for treating aliens disparately. Reno v. Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). That is, a legislative classification must be “ ‘wholly irrational’ ” to violate equal protection. Mathews v. Diaz, 426 U.S. 67, 83, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976).
First, Cordes, as a permanent resident, is similarly situated to those permanent residents who are entitled to section 212(c) relief under St. Cyr. The only diseernable difference between the two is that *897 those entitled to section 212(c) relief faced deportation at the time they entered then-guilty pleas. This difference, however, is “irrelevant and fortuitous” since Cordes quite obviously faces deportation now.[6] See Francis v. INS, 532 F.2d 268, 273 (2d Cir.1976) (“Fundamental fairness dictates that permanent resident aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner.”).
Second, the disparate treatment of Cordes and those permanent residents who are entitled to section 212(c) relief under St. Cyr lacks a rational basis. Because Cordes does not fit within the St. Cyr exception, the law treats her differently than those permanent resident aliens who formed settled expectations as to the availability of section 212(c) relief because they committed severe, deportable offenses. Had Cordes committed a more severe crime — one that would have rendered her deportable — she would have been eligible for such relief and been able to preserve the relief even though her crime was later reclassified as an aggravated felony. Put differently, those permanent residents who committed more serious crimes than Cordes obtain the section 212(c) bulwark only because they had the ironic fortune of facing the prospect of deportation at the time that they entered their guilty pleas.
The dissent relies on Taniguchi v. Schultz, 303 F.3d 950 (9th Cir.2002), to dismiss Cordes’s equal protection challenge. See dissent at 11305 Taniguchi however, has nothing to do with this case. Taniguchi claimed that section 212(h) of the INA violated her right to equal protection by providing a waiver of deportation to aggravated felons who were not permanent residents while denying the same waiver to aggravated felons who were permanent residents. Id. at 957. The panel held that Congress had a rational basis for denying a discretionary waiver to aggravated felons who were permanent residents since they enjoyed greater privileges in the United States than aggravated felons who were not permanent residents and posed a potentially higher risk of recidivism than illegal aliens who did not have the benefits that come with permanent resident status. Id. at 958. Taniguchi foreclosed an equal protection challenge to a federal immigration scheme that treated permanent residents and non-permanent residents differently. But it did not foreclose an equal protection challenge to a federal immigration scheme that effectively treats similarly situated permanent residents differently, which is the situation here. No case in this Circuit has foreclosed such a challenge.
In fact, in Tapia-Acuna v. INS, 640 F.2d 223, 225(9th Cir.1981), we held that the INS’ implementation of 8 U.S.C. § 1182(c) violated the Equal Protection Clause because it irrationally granted relief from removal to those permanent residents in exclusion proceedings who left the United States temporarily and sought return, but not to those permanent residents in deportation proceedings who had never *898 left the United States.[7] We noted that no rational purpose would be served by “giving less consideration to the alien ‘whose ties with this country are so strong that he has never departed after his initial entry’ than to the alien ‘who may leave and return from time to time.’ ” Id. (quoting Francis, 532 F.2d at 273).
Moreover, in Servin-Espinoza v. Ashcroft, 309 F.3d 1193, 1198 (9th Cir.2002), we again noted the irrational distinction drawn by the INS in granting section 212(c) relief to excludable aliens but not to deportable aliens. Denying section 212(c) relief to deportable aliens “contraven[ed] equal protection” because it disrupted the rational purpose of immigration law to “treat[ ] aliens who are already on our soil (and who are therefore deportable) more favorably than aliens who are merely seeking admittance (and who are therefore ex-cludable).” Id.
Both Tapia-Acuna and Servin-Espinoza are relevant authority here. These cases sustained equal protection challenges to the INS’ policy- of selectively granting discretionary relief from removal to similarly situated permanent residents. Our case should do no differently. The INS has the burden of justifying why Cordes should be removed in spite of her permanent resident status. See H.R.Rep. No. 104-879, at 107-09 (1997) (available in 1997 WL 9288 p. 258-262) (“[I]n the case of a long-term permanent resident of the U.S., the burden [is] on the Government to establish why the alien should be removed.”). But the INS cannot rationally do so. Allowing permanent residents who have committed worse crimes than Cordes to apply for section 212(c) relief, while denying the same opportunity to Cordes, does not achieve Congress’ express purpose behind the expanded definition of aggravated felony and its retroactive application: to expeditiously remove criminal aliens and make it more difficult for them to obtain relief from removal. See id. Indeed, the disparate grant of section 212(c) relief here does not increase the total number of criminal aliens subject to removal, as Congress intended, but rather perversely increases only the number of less dangerous criminals subject to removal.
Finally, as the IJ correctly pointed out, equity in this case unquestionably weighs in favor of allowing Cordes to apply for section 212(c) relief.[8] Cordes has lived in the United States for over three decades and has only one relevant conviction for offenses that were misdemeanors when they were committed. She has left the country only a few times to visit her mother and attend her mother’s funeral in Scotland. She has four U.S. citizen children, three of whom testified on her behalf during removal proceedings that she plays a significant role in their lives and continued well-being. She has taken measures to rehabilitate her alcohol problem by attending Alcoholics Anonymous meetings. She has volunteered for the Senior Citizen Center and Salvation Army in her commu *899 nity. She has taken measures to secure better financial footing by working at restaurants and looking for work at a grocery store. In sum, Cordes is a hard-working, engaged member of society.
IV. CONCLUSION
We hold that the INS’ application of St Cyr and Velasco-Medina, which results in the denial of section 212(c) relief for permanent residents such as Cordes, violates the Equal Protection Clause of the Constitution. We therefore grant the petition on the merits.
PETITION GRANTED.

. Section 212(c) provided that "[a]liens lawfully admitted for permanent residence who *892 temporarily proceeded abroad voluntarily ... and who are returning to a lawful unrelin-quished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General....'' 8 U.S.C. § 1182(c) (repealed 1996).
The BIA has interpreted this provision "to authorize any permanent resident with a lawful unreliquished domicile of seven consecutive years to apply for a discretionary waiver from deportation.” INS v. St. Cyr, 533 U.S. 289, 295, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (internal quotation marks and citations omitted).

. As of March 1, 2003, the Immigration and Naturalization Service ("INS”) ceased to exist and its enforcement functions were transferred to the Bureau of Immigration and Customs Enforcement within the Department of Homeland Security. See Homeland Security Act, Pub.L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). For ease of reference, however, we refer to the applicable government agency as the INS.

. Like the Alvarez-Barajas panel, we pass no comment on whether converting pending ha-beas petitions into timely filed petitions for review is the appropriate procedure "in the more unusual case where the pending habeas petition requires further factual development.” Alvarez-Barajas, 418 F.3d 1050.

. Cordes contends that this Circuit's opinion in United States v. Leon-Paz, 340 F.3d 1003 (9th Cir.2003), undermines the holding in Ve-lasco-Medina by applying the St. Cyr exception to a defendant who had not committed a deportable offense at the time of her conviction. Like Cordes, Leon-Paz’s conviction became an aggravated felony as a direct consequence of section 321 of IIRIRA. 340 F.3d at 1005-06. Again the inquiry turned on whether Leon-Paz had expected to be eligible for section 212(c) relief at the time that he entered his plea. The panel found that he did because he could not have been aware of the unavailability of section 212(c) relief in the event that his crime would be reclassified as an aggravated felony since section 440(d) of AEDPA had not yet been passed. Id. at 1006-07. Here, the passage of section 440(d) of AEDPA predated Cordes's conviction, so Leon-Paz is distinguishable.

. Cordes relies on the concurrence in United States v. Ubaldo-Pigueroa, 364 F.3d 1042, 1051 (9th Cir.2004) (Pregerson, J., concurring), which maintained that retroactive application of section 321 of IIRIRA violates due process. The concurrence, however, is not the law of the circuit.

. The dissent stresses how Cordes “was much better situated” than permanent residents such as St. Cyr “because she was not deporta-ble” at the time she pled guilty to her offenses. See dissent at 11304. But this fact ignores entirely Cordes's present situation. Due to the retroactive application of section 321 of IIRIRA, she is now precisely in the same position as permanent residents such as St. Cyr — facing deportation because her crime has been reclassified as an aggravated felony. Indeed, Cordes should be much better situated than permanent residents such as St. Cyr since, unlike them, she pled guilty to less severe, non-deportable offenses. The INS' disparate grant of section 212(c) relief, however, irrationally prevents this result.

. Effective April 1, 1997, Congress repealed 8 U.S.C. § 1182(c) and adopted a new provision which unambiguously bars discretionary relief for permanent residents in either exclusion or deportation proceedings who commit one of the specified crimes in 8 U.S.C. § 1251(a)(2). Thus, the specific issue in Tapia-Acuna is no longer material. See United States v. Estrada-Torres, 179 F.3d 776, 778-79 (9th Cir.1999).

. Of course, the "irrational inequality” necessary to sustain an equal protection challenge, see dissent at 11306, is apparent here from the INS’ disparate grant of section 212(c) relief. It is the inequity to Cordes, however, that makes the equal protection violation in this case especially severe.