Maria Dolores RAMIREZ–LANDEROS,
Petitioner,

v.

Alberto R. GONZALES,* Attorney
General, Respondent.

No. 03–71743.

Agency No. A78–754–557.

United States Court of Appeals,
Ninth Circuit.

Argued & Submitted Feb. 10, 2005.

Submission Withdrawn Feb. 17, 2005.

Resubmitted Sept. 8, 2005.

Sept. 12, 2005.

Tim Everett, Los Angeles, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, John C. Cunningham, San Francisco, CA, Shelley R. Goad, U.S. Department of Justice, Washington, DC, for Respondent.

* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

Before HUG, THOMPSON, and HAWKINS, Circuit Judges.

## MEMORANDUM**

Maria Dolores Ramirez–Landeros petitions for review of the Board of Immigration Appeals' denial of her application for cancellation of removal and adjustment of status. We hold that the Board's application of its precedent governing cancellation of removal to her case violated her constitutional right to equal protection. Accordingly, we grant her petition.

## I. Factual Background

Ramirez–Landeros, a Mexican national, has resided in the United States since October, 1989. She has two children, both born in the United States, and her husband recently became a permanent resident. Her teenage son Eric suffers from total blindness and various other disabilities requiring continuous therapeutic intervention. Although Eric is able to obtain state-of-the-art care in the United States, the treatment he needs is scarce or unavailable in Mexico. For several years, Ramirez–Landeros has volunteered her time on behalf of organizations caring for blind and disabled children like her son.

Following a brief trip to Mexico to visit her ailing father, Ramirez–Landeros was intercepted at the border on August 25, 2000, placed in expedited removal proceedings, and ordered removed under 8 U.S.C. § 1225. She tried to enter the country again on August 31, 2000, but was ordered removed a second time. Following a third attempt on September 4, 2000, Ramirez–Landeros was detained and placed in removal proceedings under 8 U.S.C. § 1229a. She filed an application for cancellation of removal and adjustment of status based on

her long residency in the United States and the extreme hardship her son would suffer if she were removed. *See* 8 U.S.C. § 1229b(b)(1).

Although the immigration judge found Ramirez–Landeros otherwise eligible for cancellation, especially given the difficulties her disabled son would face were she removed, the judge concluded that the prior expedited removal orders prevented her from demonstrating good moral character as required by 8 U.S.C. § 1229b(b)(1)(B). The Board of Immigration Appeals affirmed the judgment of the immigration judge on an alternate ground: that the expedited removal orders interrupted the accrual of continuous physical presence for purposes of cancellation. *See* 8 U.S.C. § 1229b(b)(1)(A). Ramirez–Landeros timely petitioned for review.

## II. Standard of Review

Because the Board reviewed the Immigration Judge's decision *de novo* rather than adopting that decision as its own, we consider only the decision of the Board. *Kankamalage v. INS*, 335 F.3d 858, 861 (9th Cir.2003). We review purely legal questions concerning the meaning of immigration statutes *de novo*, *Lagandaon v. Ashcroft*, 383 F.3d 983, 987 (9th Cir.2004), although we must defer to an agency interpretation that is "based on a permissible construction" of an ambiguous statute. *Avendano–Ramirez v. Ashcroft*, 365 F.3d 813, 816 (9th Cir.2004) (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

## III. Discussion

### A. Good Moral Character Requirement

Ramirez–Landeros argues that the Immigration Judge erred in finding her statu-

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

torily ineligible for cancellation based on a lack of good moral character, because Congress erred in failing to fix a cross-reference in the statute. *See* 8 U.S.C. § 1101(f)(3) (precluding good moral character finding for "a member of one or more of the classes of persons, whether inadmissible or not, described in [8 U.S.C. § 1182(a)(9)(A)]," i.e., persons previously ordered removed). Because the Board did not rely on this conclusion in its decision, we need not address it. *See Kankamalage,* 335 F.3d at 861.

## B. Expedited Removal Orders

Ramirez–Landeros contends that she was not an "arriving alien" for purposes of expedited removal, but rather one of the "certain other aliens" described in 8 U.S.C. § 1225(b)(1)(A)(iii)(II), to which expedited removal does not apply. She also argues that this same statute gave the immigration judge authority to review and vacate the expedited removal orders underlying her ineligibility for cancellation of removal.

■ We lack jurisdiction to review "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of [expedited] removal...." 8 U.S.C. § 1252(a)(2)(A)(i); *see also Avendano–Ramirez,* 365 F.3d at 818–19. Moreover, the REAL ID Act of 2005, Pub. L. No. 109–13, 119 Stat. 302 (2005) ("REAL ID Act"), did not restore our jurisdiction to consider questions of law and constitutional claims arising out of expedited removal orders. In the pertinent provision of the REAL ID Act, 8 U.S.C. § 1252(a)(2)(D), Congress repealed "all jurisdictional bars to our direct review of final removal orders *other than those remaining in 8 U.S.C. § 1252 (in provisions other than(a)(2)(B) or (C))* following the amendment of that section by the REAL ID Act." *Fernandez–Ruiz v. Gonzales,* 410 F.3d 585, 587 (9th Cir.2005) (emphasis added). Section 1252(a)(2)(A), barring review of expedited removal orders, is just such a provision. Indeed, Congress seems to have taken great care to exclude subparagraph (A) from the provision restoring jurisdiction over constitutional and legal claims. Accordingly, we do not have jurisdiction to consider these arguments.

## C. Equal Protection

■ Ramirez–Landeros also argues that the Board's decision violated her constitutional right to equal protection by treating her differently from similarly situated aliens who, having managed to reenter the United States illegally after a short absence, would still be eligible for cancellation of removal. Although her argument has substantial force, we must first examine whether we have jurisdiction to consider it.

The REAL ID Act clearly restored our jurisdiction to review "constitutional claims or questions of law" raised in a petition for review of a final order of removal, notwithstanding any contrary suggestion in 8 U.S.C. § 1252(a)(2)(B) or (C). *Fernandez–Ruiz,* 410 F.3d at 587. Our jurisdiction is not foreclosed by § 1252(a)(2)(A), which prohibits review of expedited removal orders, because Ramirez–Landeros's equal protection argument goes to whether the Board erred in determining that she was ineligible for cancellation of removal under § 1229b(b).[1] Our decision in *Aven-*

---

1. The Board relied on *Matter of Romalez–Alcaide,* 23 I. & N. Dec. 423 (BIA 2002) (en banc), in concluding that Ramirez–Landeros's expedited removal orders terminated her physical presence in the country and thus rendered her statutorily ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1)(A) (requiring ten years' continuous physical presence). We have found this reading of the statute to be "a reasonable one,

*dano–Ramirez* does not dictate otherwise. The petitioner in that case raised two arguments identical to those we have already rejected here: that Congress erred in denying good moral character to aliens previously removed, and that expedited removal was improper under 8 U.S.C. § 1225(b)(1)(A)(iii). *See Avendano–Ramirez,* 365 F.3d at 818, 819 n. 19. We faithfully follow *Avendano–Ramirez* in concluding that we lack jurisdiction to consider Ramirez–Landeros's statutory attacks on her expedited removal orders. Her constitutional argument, however, is distinct in that it pertains primarily to the Board's application of its own precedent in determining her eligibility for cancellation of removal. We neither faced nor foreclosed such an argument in *Avendano–Ramirez.* Accordingly, we conclude that our jurisdiction to review Ramirez–Landeros's constitutional claim was confirmed by the REAL ID Act.[2]

Although we have jurisdiction to review this claim, the scope of our review is "very limited." *Taniguchi v. Ashcroft,* 303 F.3d 950, 957 (9th Cir.2002). So long as there is a "facially legitimate and bona fide reason" for a discriminatory rule, the rule must be upheld, even if the reason offered by the government is not the reason that led to the legislative classification in the first place. *Id.* (quoting *United States v. Viramontes–Alvarado,* 149 F.3d 912, 916 (9th Cir.1998)). Our inquiry is thus akin to the rational basis review generally employed in equal protection challenges not involving suspect classifications or fundamental

rights. *See Cordes v. Gonzales,* 421 F.3d 889, 896–97 (9th Cir.2005) ("The government must therefore demonstrate a rational basis for treating aliens disparately."); *see also Wauchope v. United States Dep't of State,* 985 F.2d 1407, 1414 n. 3 (9th Cir.1993). We need not accept, however, an assertion of legislative purpose that could not have been a goal of the legislation, nor may we attribute to the government purposes which it cannot reasonably have entertained. *Id.* at 1415.

■ Even on such deferential review, we must conclude that the Board's application of its precedent in this case leads to an irrational result. In general, an alien may establish the ten years' physical presence required for cancellation of removal so long as her departures from the United States during that time did not exceed 90 days per departure or 180 days in the aggregate. 8 U.S.C. § 1229b(d)(2). In other words, Congress anticipated that aliens not lawfully present in the United States would still be able to cancel removal and adjust status despite brief sojourns outside the country. It is undisputed that Ramirez–Landeros's departures from the United States were brief and infrequent enough to fall within this exception. It is also beyond question that she would have been eligible for relief, had she only been able to evade immigration authorities upon her last return from Mexico.

This perverse result is "wholly irrational" in light of the purposes of the Immigra-

worthy of our deference." *Vasquez–Lopez v. Ashcroft,* 343 F.3d 961, 973 (9th Cir.2003) (as amended on denial of rehearing en banc). Ramirez–Landeros does not dispute the Board's statutory conclusion that an order of removal interrupts the accrual of physical presence. Rather, she raises a distinct constitutional claim: that the Board's application of its precedent to her case results in an irrational distinction that violates equal protection.

2. Even before passage of the REAL ID Act, we retained jurisdiction to review the Board's interpretation of the statutory prerequisites for cancellation of removal, despite the bar against review of any "judgment" regarding the granting of such relief in 8 U.S.C. § 1252(a)(2)(B)(i). *See, e.g., Gomez–Lopez v. Ashcroft,* 393 F.3d 882, 884 (9th Cir.2005).

tion and Nationality Act. The Board's application of its precedent here creates two classes of similarly situated aliens who are treated very differently for purposes of cancellation of removal: (1) aliens like Ramirez–Landeros, who leave the country briefly with the expectation that their eligibility for cancellation will not be affected, but are detained at the border upon their return and ordered removed, thus interrupting the accrual of physical presence and precluding a finding of good moral character; and (2) aliens who leave the country for brief periods of time, but successfully evade detection upon their return and thus remain eligible for cancellation of removal. These two groups of aliens are situated identically save for one difference: the aliens who succeed in reentering the country illegally are rewarded with eligibility for relief, while those who fail are deemed ineligible. We can conceive of no rational basis for a rule that rewards successful lawbreakers yet punishes those unfortunate enough to get caught.

Indeed, the government has offered no reason at all for this different treatment. The government instead suggests that *American Immigration Lawyers Association v. Reno*, 18 F.Supp.2d 38 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C.Cir.2000), forecloses Ramirez–Landeros's equal protection claim. The individual plaintiffs in that case, however, were unable to demonstrate any "substantial connection" to the United States. *See id.* at 59–60 & n. 17. Ramirez–Landeros, in contrast, has significant long-term family and community connections to the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the

United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *see also Landon v. Plasencia*, 459 U.S. 21, 32–33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (recognizing change in constitutional status attending development of "ties that go with permanent residence," and assimilating status of permanent resident alien detained at border to that of permanent resident alien continuously residing and present in the United States). We have recognized that "aliens who have *once* passed through our gates, even illegally," are entitled to due process, while only aliens "on the threshold of *initial* entry stand[ ] on a different footing." *Wong v. United States INS*, 373 F.3d 952, 971 (9th Cir.2004) (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953)) (emphasis added). Even though Ramirez–Landeros has not been admitted to the United States as a permanent resident, her long presence here has allowed her to develop substantial family and community ties to this country. The *American Immigration Lawyers Association* case is thus readily distinguishable.

Accordingly, we hold that the Board's application of its precedent to this case creates a "wholly irrational" distinction between two similarly situated groups of aliens and thus violates equal protection. *See Cordes*, 421 F.3d at 896–97. Neither the physical presence requirement nor the good moral character determination should stand in the way of Ramirez–Landeros's eligibility for cancellation of removal. *Cf. Wauchope*, 985 F.2d at 1416–17 (proper remedies for injuries caused by a constitutionally underinclusive rule include extending the benefits of the rule to those aggrieved by exclusion).[3]

3. We also note that the equities in this case strongly favor allowing Ramirez–Landeros to

seek cancellation of removal. *See Cordes*, 421 F.3d at 898–99 (noting petitioner's long resi-

## IV. Conclusion

For the foregoing reasons, Ramirez–Landeros's petition for review is GRANT-ED, and her case is REMANDED to the Board of Immigration Appeals for further proceedings consistent with this disposition.

dence in the United States, negligible criminal record, short departures for family-related reasons, and extensive volunteer service in her community). By all accounts, Ramirez–Landeros is an exemplary member of her community. Nor should it be forgotten that the brunt of the hardship stemming from her removal would be borne by a vulnerable United States citizen: her severely disabled son. As we did in *Cordes,* we take note of these equitable considerations here.